# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Ryan C. Edner, | No. 19-CV-2486 (SRN/LIB) |
| Plaintiff, | |
| v. | **ORDER FOR PARTIAL DISMISSAL** |
| Redwood County District Attorney's Office; Redwood County District Courthouse; Redwood County Sheriff's Department; Redwood Count[y]—State of Minnesota Board of Public Defense; City of Morgan Police Department; Judge Patrick Rohland, #0305339; Steven Collins, District Attorney, #0319752; Jenna Peterson-Haler, Assistant District Attorney, #0395397; Kelly Meehan, Assistant District Attorney, #0390055; Joel Solie, Public Defender, Solie Law Office, #0199643; Erica Allex, Public Defender, #0389666; Patricia Amberg, Redwood County Court Administrator; Jodi Haen, Redwood County Court Reporter; Sheriff Randy Hanson, Redwood County Sheriff's Department; Chief Deputy Mark E. Farasyn, Redwood County Sheriff's Department; Jason Jacobson, Redwood County Sheriff's Department; Mitch Zimmerman, Redwood County Sheriff's Department; Mike Campbell, Redwood County Sheriff's Department; Mike Hubin, Redwood County Sheriff's Department; Bostyn Thompson, City of Morgan Police Department; Kris Karlgaard, City of Breckenridge Police Department; Attorney Eric Olson, Olson Defense, PLLC, #0278427; Attorney Ryan Garry, Ryan Garry, LLC, #0336129; Attorney Paul Hunt, Karkella, Hunt & Cheshire, | |

PLLP, #0319806; and Attorney Megan
Burkehammer, Thornton Law Office,
#0386588,

                    Defendants.

Ryan C. Edner, Plaintiff, 416 4th Ave N., Wahpeton, ND 58075

SUSAN RICHARD NELSON, United States District Judge

    Almost six years ago, Plaintiff Ryan C. Edner initiated this federal lawsuit against

numerous parties involved in his state court criminal proceedings in Redwood County,

Minnesota.  Compl. [Doc. No. 1].  This matter is currently before the Court on Edner's

objection to the Report and Recommendation ("R&R") of United States Magistrate Judge

Leo I. Brisbois, which recommends dismissing Edner's complaint for failure to prosecute

because Edner did not timely indicate his intent to prosecute this matter after his state court

criminal charges were dismissed.  *See* [Doc. No. 20].  For the following reasons, the Court

respectfully declines to adopt Magistrate Judge Brisbois's Report and Recommendation,

but nevertheless dismisses Edner's complaint, in large part, without prejudice.

I.    **Background**

    While Edner initiated this action almost six years ago, the events giving rise to his

claims began approximately ten years ago.  *See, e.g.*, Compl. ¶ 3.  This Court, therefore,

begins its discussion on the background of this case in the year 2015.[1]

---

[1] The state criminal record is voluminous, and this Court does not endeavor to describe
every docket entry, only those relevant to the Court's preservice review of Edner's
complaint pursuant to 28 U.S.C. § 1915(e).

On September 2, 2015, the Redwood County Sheriff's Office received a report that Edner's brother, Eric J. Edner,[2] who was twenty-seven years old at the time, was in a relationship with a juvenile girl. *See State of Minnesota v. Ryan C. Edner*, No. 64-CR-15-649 (Minn. Dist. Ct.) (MCRO) [Index #17], *available at* https://publicaccess.courts.state.mn.us/CaseSearch (last accessed Aug. 19, 2025) ("*Edner I*").[3] There is some dispute about the nature of this relationship—law enforcement characterizes it as a sexual relationship, but the Edners maintain it was not sexual in nature. *Id.* In any event, following this report, law enforcement obtained a search warrant to search electronic devices located at 506 4th St., Morgan, Minnesota. *Edner I* (Index #17). This is the residence of brothers Ryan and Eric Edner ("Edner residence").

On September 6, 2015, law enforcement, including Morgan Police Chief Bostyn Thompson, Investigator Jacobson, and Redwood County Sheriff's Department Deputy Hubin, arrived at the Edner residence to execute the search warrant. *Id.* Relevant here, when they arrived, Eric Edner was outside the residence, entering a 2008 Kia passenger car. *Id.* He was served with the search warrant, read his *Miranda* rights, and then interviewed by City of Morgan Police Chief Thompson. *Id.*

Ryan Edner was in the residence. After law enforcement located several loaded handgun magazines in the entryway, officers secured Ryan Edner in the back of a squad

---

[2] For clarity, this Court will refer to Eric Edner by his first and last name and Plaintiff by his last name, unless otherwise noted.

[3] The court may take judicial notice of public records. *See Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005).

car for the search.  *Id.*  During that search, officers discovered drug paraphernalia, including glass pipes with marijuana residue and marijuana grinders, and they located a handgun in the dining room.   When law enforcement searched what Ryan Edner had previously identified as his room, Redwood County Sheriff's Department Deputy Hubin found a 41-quart tub of partially processed marijuana plants, and during the search of the basement, Investigator Jacobson found green leaves and residue "consistent with marijuana located on blankets covering a drum set."  *Id.*  Officers then drafted a second search warrant for marijuana.  During a search of Eric Edner's phone, law enforcement found text messages consistent with a marijuana growing operation.  *Id.*  Officers obtained additional evidence of marijuana and drug paraphernalia in the search of the 2008 Kia and a 2002 Ford Ranger pickup truck that was located on the property.  *Id.*  The search of the 2002 Ford Ranger law enforcement also uncovered a "cased AR-15 style .22 caliber rifle with 4 loaded magazines" next to a "black ski mask, a Kevlar (bullet proof) vest, and a dark colored sweat shirt" and "an ammunition bag containing numerous rounds of ammunition."  *Id.*  Kelly L. Meehan, Assistant Redwood County Attorney, subsequently approved the criminal complaint signed by Morgan Police Chief Thompson charging Ryan Edner with two counts of possession of a controlled substance in the fifth degree in violation of Minn. Stat. § 152.025 subd. 2(a)(1), commission of a crime while wearing or possessing a bullet-resistant vest in violation of Minn. Stat. § 609.486, carrying a weapon without a permit in violation of Minn. Stat. § 624.714 subd. 1a, and possession of ammunition or any firearm

by a user of a controlled substance in violation of Minn. Stat. § 624.713 subd. 1(10)(iii).[4]
*Id.*

After almost ten years of litigation, the case never made it to trial, owing, in no small part, to a combination of multiple changes in defense counsel, Edner exercising his constitutional right to challenge the state's case, the state trial court judge granting repeated requests for continuances and allowing Edner to re-litigate evidentiary issues, a change in the presiding judicial officer, and Edner failing to appear for court.  Court records, for example, show that Edner qualified for and requested the services of the public defender's office, and that office was appointed to represent him.  Joel Solie first represented him in the capacity of an assistant public defender, but then Erica Allex appears as his attorney of record.  *See id.* [Index #15]; [Index #26].  On the eve of a contested omnibus hearing challenging the search warrant, it appears that Ryan Edner retained Paul Hunt, a private criminal defense attorney, to represent him, and Mr. Hunt requested a continuance in the proceedings.  *Id.* [Index #27].  Mr. Hunt, on Ryan Edner's behalf, subsequently moved to dismiss the charges, arguing that the warrant lacked probable cause, that law enforcement acted unreasonably in the execution of the warrant, and that there was no probable cause to support the charges.  Judge Patrick Rohland denied the motion.  *Id.* [Index #63].  Shortly after entering a not guilty plea on Edner's behalf and asking that a trial date be scheduled

---

[4] Eric J. Edner was also charged with criminal offenses stemming from this investigation. *See State of Minnesota v. Eric J. Edner*, No. 64-CR-15-648 (Minn. Dist. Ct.), *available at* https://publicaccess.courts.state.mn.us/CaseSearch (last accessed Aug. 19, 2025) [Index # 18].

with enough time for testing to be completed on the suspected marijuana, Mr. Hunt moved to withdraw his representation. *Id.* [Index #81]. That motion was granted. *Id.*

Approximately one month later, in December 2016, Ryan Garry, a private criminal defense attorney, entered his appearance to represent Edner. *Id.* [Index #84]. Mr. Garry requested a continuance to consult with his client and review the discovery. *Id.* [Index #86]. That request was granted. *Id.* In February 2017, Mr. Garry filed his own motion to dismiss for lack of probable cause and to suppress evidence. *Id.* [Index #89]. He also requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), arguing that the search warrant contained material misrepresentations. *Id.* [Index #90]. Over the prosecutor's objection, Judge Rohland granted Edner's motion to re-open the omnibus hearing to address issues related to the searches of the 2002 Ford Ranger and 2008 Kia, including probable cause for the charges stemming from those searches. *Id.* [Index #95].

Five months later, in July 2017, after a contested omnibus hearing, Judge Rohland denied Edner's motion to suppress evidence seized during the search of the vehicles, denied the request to dismiss charges for lack of probable cause, and denied his request for a *Franks* hearing to challenge the veracity of the warrant. *Id.* [Index #108]. Days before the scheduled "change of plea" hearing, Mr. Garry moved to withdraw as counsel. *Id.* [Index #112]. Edner then failed to appear at hearings scheduled for September 11, 2017, and October 16, 2017. *See id.* On October 20, 20217, Judge Rohland issued a warrant for Ryan Edner's arrest based on his failure to appear at the October 16, 2017, hearing. *Id.* [Index #122]. At the request of Redwood County Attorney Jenna Peterson, on January 4, 2018, Judge Rohland issued a nationwide warrant for Edner's arrest. *Id.* [Index #124].

6

The warrant was not served on Ryan Edner until August 11, 2020. *Id.* [Index #133]. At his first court appearance on the warrant, Judge Rohland granted Edner's request to be represented by a public defender—even though Mr. Garry's motion to withdraw as counsel was still pending—and another court date was scheduled. *Id.* [Index #135]. Assistant Redwood County Attorney Kelsie Kingstrom appeared on behalf of the State. *Id.* Later, even though Ryan Edner's case was well over five years old at this point, another request for a continuance was granted. *Id.* [Index #145]. On December 20, 2020, after learning that Ryan Edner had initiated the instant proceedings against him and several others, Judge Rohland recused himself, further delaying the state court proceedings. *Id.* [Index # 149].

State court Judge Michelle Dietrich then became the presiding judicial officer and additional continuances, hearings, and requests for relief ensued. *See id.* Eventually, over a year later, Judge Dietrich issued a scheduling order and set trial for October 26-27, 2022. *Id.* [Index #215]. One month prior to trial, the State requested an evaluation of Ryan Edner's competency pursuant to Minn. R. Crim. P. 20.01. That request was granted, and the trial was further delayed. *Id.* [Index #256]. Unsurprisingly, Edner did not participate in the competency evaluation, and Judge Dietrich issued a second order for a competency evaluation. *Id.* [Index #271]. Edner was found competent to proceed. *Id.* [Index #285].

On June 1, 2023, Judge Dietrich entered a second scheduling order, setting a jury trial for January 17-18, 2024. *Id.* [Index #284]. On November 30, 2023, Judge Dietrich issued a warrant for Edner's arrest due to his failure to appear at the pretrial hearing. *Id.* [Index #317]. Court records show that the warrant was executed on Edner on December 21, 2023, in Richland County, North Dakota. *Id.* [Index #349]. Judge Dietrich

subsequently continued Edner's trial dates on the grounds that as of January 8, 2024, Edner was challenging his extradition to Minnesota and the extradition hearing was still pending. *Id.* [Index #356]. The warrant was eventually served on Edner on February 9, 2024, at which time a third scheduling order was issued, setting a jury trial for June 4-5, 2024. *Id.* [Index #364]. Judge Dietrich issued a fourth scheduling order on May 6, 2024, setting trial for September 10-11, 2024, nine years after the events giving rise to Edner's criminal charges. *Id.* [Index #384]. Mere weeks before trial, and after parties submitted additional requests for relief, the State dismissed the charges against Edner, explaining that given the years-long delay in setting trial dates,[5] there was no longer any reportable level of THC in the State's evidence. *Id.* [Index #436].

As noted above, moreover, while the state trial court case was pending, Edner initiated this matter in federal court.[6] Upon initial preservice review of Edner's complaint and IFP application pursuant to 28 U.S.C. § 1915(e), this Court ordered that this matter be

---

[5] Edner's trips to the state appellate courts also likely contributed to the slow pace at which his state criminal case progressed in the trial court. *See In re Edner*, No. A23-1926, 2024 WL 631117, at *1 (Minn. Ct. App. Feb. 13, 2024) (denying Ryan Edner's petition for a writ of prohibition seeking to have the assigned judicial officer disqualified from his case based on allegations of personal bias, a conflict of interest, and other allegations of malfeasance); *see also State v. Edner*, No. A23-0999, 2023 WL 6172198, at *1 (Minn. Ct. App. Sept. 19, 2023) (explaining that Edner had already sought interlocutory relief from trial court orders three times and denying his motion for discretionary review of Judge Dietrich's order regarding filings and appointment of advisory counsel).

[6] Indeed, Edner initiated several federal lawsuits regarding his state trial court criminal case during the pendency of those proceedings. *See Edner v. Minnesota, et al.*, No. 24-CV-2299 (JWB/LIB), 2024 WL 3808738 (D. Minn. July 11, 2024); *Edner v. Dietrich, et al.*, No. 22-CV-70 (JRT/LIB), 2022 WL 981367 (D. Minn. Feb. 24, 2022).

dismissed without prejudice based on the *Younger* abstention doctrine because his state criminal proceedings remained pending. [Doc. No. 7]. On appeal,[7] the United States Court of Appeals for the Eighth Circuit affirmed this Court's decision to abstain, but vacated the dismissal of the action as to Edner's claim for damages and remanded for entry of a stay pending resolution of the state proceedings. [Doc. No. 17]. Consistent with the Eighth Circuit's instructions on remand, this Court entered an order vacating the judgment, directing the Clerk of Court to reopen the case, and staying the case pending resolution of the state court proceedings. [Doc. No. 15].

After the State dismissed the charges against Ryan Edner, United States Magistrate Judge Leo I. Brisbois ordered Plaintiff to provide the court with an update on his state criminal proceedings and to notify the Court whether he intended to prosecute this matter within 30 days from the date of the order, or by January 13, 2025, failing which this matter would be subject to dismissal for failure to prosecute. [Doc. No. 19]. Edner did not respond to this order. Accordingly, on February 28, 2025, Magistrate Judge Leo Brisbois, consistent with his earlier warning, entered an R&R recommending dismissal for failure to

---

[7] Ryan Edner and Eric Edner filed nearly identical civil complaints in federal court challenging their respective state criminal cases. *See* Compl., *Eric J. Edner v. Redwood County District Attorney's Office, et al.*, No. 19-CV-02485 (SRN/LIB) (D. Minn. Sept. 9, 2019) [Doc. No. 1]. Eric Edner also appealed this Court's order dismissing the case without prejudice pursuant to the *Younger* abstention doctrine on the grounds that Eric Edner's state criminal proceedings remained ongoing. *Id.* [Doc. No. 6]. Eric Edner appealed that order. *Id.* [Doc. No. 9]. The Eighth Circuit consolidated the appeals, ordering that both cases be stayed but remanded with respect to the request for damages. *Id.* [Doc. No. 14]. There is currently an active warrant for Eric Edner's arrest in his state criminal case. *See Eric J. Edner*, No. 64-CR-15-648 (Minn. Dist. Ct.) [Index #144]. That case, therefore, remains pending.

prosecute pursuant to Fed. R. Civ. P. 41(b). [Doc. No. 20]. Edner then submitted a timely objection, conceding that he failed to respond to Magistrate Judge Brisbois's Order but arguing nevertheless that he intends to prosecute this action. *See* [Doc. No. 21].

## II.    Analysis

### A. Edner's Objection to the February 28, 2025 Report & Recommendation

Magistrate Judge Brisbois warned Edner that failure to comply with his December 12, 2024, order would result in a recommendation for dismissal for failure to comply with his court order. [Doc. No. 19]. Edner concedes that he did not timely respond to Magistrate Judge Brisbois's order. [Doc. No. 21]. A plaintiff's failure to comply with *any* court order is grounds for dismissal. *See Henderson v. Renaissance Grand Hotel*, 267 F. App'x 496, 497 (8th Cir. 2008) (per curiam) ("A district court has discretion to dismiss an action under Rule 41(b) [of the Federal Rules of Civil Procedure] for a plaintiff's failure to prosecute, or to comply with the Federal Rules of Civil Procedure or any court order.") (citing Fed. R. Civ. P. 41(b)). This Court, moreover, is not persuaded that Edner's multiple overlapping filing deadlines provides good cause to excuse his noncompliance with Magistrate Judge Brisbois's order. *See Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) ("Although pro se pleadings are to be construed liberally, a pro se litigant is not excused from complying with substantive and procedural law."). That said, Edner's objection to Magistrate Judge Brisbois's recommendation for dismissal clearly evinces an intent to prosecute this matter. *See* [Doc. No. 21]. Accordingly, the Court respectfully declines to adopt the magistrate judge's recommendation for dismissal of this matter in its entirety.

**B. Request for Stay**

Edner also requests a stay of these proceedings pursuant to the *Younger* abstention doctrine, 401 U.S. 37 (1971), pending resolution of his "ongoing appellate proceedings," including his petition for writ of certiorari to the United States Supreme Court. Object. at 8 [Doc. No. 21]. That request is denied.

As described in detail above, publicly accessible state court records confirm that the State has dismissed the criminal charges giving rise to Edner's claims. *See Edner I*, No. 64-CR-15-649. Edner points to no notice of appeal in that case, and, upon close review, this Court finds none. Accordingly, there is no basis to continue to stay the instant proceedings.[8] Edner's request is therefore denied, and this Court proceeds to a preservice review of his claims on the merits pursuant to 28 U.S.C. § 1915(e).

**III. Preservice Review of the Complaint Pursuant to 28 U.S.C. § 1915(e)**

Edner did not pay the filing fee associated with this action. Instead, he requests to proceed *in forma pauperis* ("IFP"). [Doc. No. 2]. That IFP application is therefore currently before the Court for preservice review pursuant to 28 U.S.C. § 1915(e). Upon completing that review, the Court dismisses Edner's Complaint [Doc. No. 1], in large part, without prejudice.

---

[8] Notably, Edner's petition for a writ of certiorari to the United States Supreme Court concerns a different case file. *See Edner v. State of Minnesota*, No. 24-2639, 2024 WL 5398610, at *1 (8th Cir. Oct. 24, 2024), *aff'g* No. 24-2299 (JWB/LIB), 2024 WL 3808738 (D. Minn. July 11, 2024), *cert. denied* -- S. Ct. --, 2025 WL 1426716 (2025).

A.     **Legal Standard**

Even if Ryan Edner qualifies financially for IFP status, an IFP application will be denied, and an action will be dismissed, when the action is frivolous or malicious or fails to state a cause of action on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam); *Carter v. Schafer*, 273 F. App'x 581, 582 (8th Cir. 2008) (per curiam) ("[C]ontrary to plaintiffs' arguments on appeal, the provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service.").

In reviewing whether a complaint states a claim on which relief may be granted, the Court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Ingram v. Ark. Dep't of Corr.,* 91 F.4th 924, 927 (8th Cir. 2024). The factual allegations in the complaint need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing the sufficiency of the complaint, the court may disregard "legal conclusion[s] couched as [] factual allegations." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Finally, although pro se complaints are to be construed liberally, they still must allege sufficient facts to support the proposed claims, and the Court cannot "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).

### B.    Introduction

Edner's 56-page complaint identifies 25 defendants.  *See* Compl. at 1.  Those defendants fall into the following four categories: (1) Prosecutors—the Redwood County District Attorney's Office, and Assistant County Attorneys Steven Collins, Jenna Peterson-Haler, and Kelly Meehan; (2) Judicial Officials—the Redwood County District Courthouse, Judge Patrick Rohland; Patricia Amberg, Redwood County Court Administrator; and Jodi Haen, Redwood County Court Reporter; (3) Law Enforcement Officials—Redwood County Sheriff's Department, and its employees, Sheriff Randy Hanson, Chief Deputy Mark E. Farasyn, and Deputies Jason Jacobson, Mitch Zimmerman, Mike Campbell, and Mike Hubin; Kris Karlgaard, City of Breckenridge Police Department; and City of Morgan Police Department, and its employee Bostyn Thompson; and (4) Defense Attorneys, including public defenders—Redwood Count[y], State of Minnesota Board of Public Defenders; Joel Solie, Public Defender, Solie Law Office; Erica Allex, Public Defender; Attorney Eric Olson, Olson Defense, PLLC; Attorney Ryan Garry, Ryan Garry, LLC; Attorney Paul Hunt, Karkella, Hunt & Cheshire, PLLP; and Attorney Megan Burkehammer, Thornton Law Office.

Edner asserts causes of action against these defendants under 18 U.S.C. § 242 and 18 U.S.C. § 1951.  He also claims that the defendants engaged in a civil conspiracy to violate his constitutional rights under 42 U.S.C. § 1983.

### C.    Discussion

#### 1.    18 U.S.C. § 242 and 18 U.S.C. § 1951

Edner asserts violations of 18 U.S.C. § 242 and 18 U.S.C. § 1951—provisions of the federal criminal code.  Edner cannot seek relief pursuant to either § 242 or § 1951.  It is well established that there is no private cause of action under § 242.  *See Horde v. Elliot*, No. 17-CV-800 (WMW/SER), 2018 WL 987683, at *10 (D. Minn. Jan. 9, 2018) (18 U.S.C. § 242 does not provide a private cause of action) (listing cases), *R&R adopted by* 2018 WL 985294 (D. Minn. Feb. 20, 2018).  Similarly, § 1951 does not provide a private right of action.  *See Jackson v. Wells Fargo*, No. 19-CV-2326 (NEB/BRT), 2019 WL 7882112, at *3 (D. Minn. Oct. 9, 2019) (listing cases), *R&R adopted by* 2019 WL 6492464 (D. Minn. Dec. 3, 2019).  Indeed, "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case."  *United States v. Nixon*, 418 U.S. 683, 693 (1974).  Accordingly, Edner's claims pursuant to 18 U.S.C. § 242 and 18 U.S.C. § 1951 are dismissed.

#### 2.    42 U.S.C. § 1983

With respect to his section 1983 claims, Edner asserts that the defendants engaged in a conspiracy to violate his constitutional rights under 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege a violation of a constitutional right committed by a person acting *under color of state law*."  *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006) (emphasis added).

"To state a claim of civil conspiracy pursuant to § 1983, a plaintiff must allege that (1) defendants conspired to deprive the plaintiff of [his] constitutional rights; (2) at least

one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 844 (D. Minn. 2021) (citing *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008)). "The threshold requirement for a § 1983 conspiracy claim is a deprivation of a constitutional right or privilege." *Id.* (citing *White*, 519 F.3d at 814). The Court considers Edner's § 1983 and civil conspiracy claims against each of the four categories of defendants, in turn, below.

### a. The Prosecutors (Category One) are Entitled to Immunity

The Redwood County District Attorney's Office, Assistant County Attorney Steven Collins, Assistant County Attorney Peterson-Haler, and Assistant County Attorney Kelly Meehan are immune from suit.

Edner asserts that these prosecutors conspired with law enforcement to bring charges against him lacking in probable cause. *See* Compl. at 13-17. He says the prosecutors conspired with Morgan Police Chief Bostyn Thompson and Redwood County Sheriff's Department Deputy Jason Jacobson to draft an "illegal and defective warrant." *Id.* at 14. He further states that Meehan engaged in improper communications with Judge Rohland in violation of the rules of professional ethics and that she conspired with his court appointed counsel, Joel Solie and Erica Allex, to listen to his private attorney-client conversations. According to Edner, Meehan resigned as the prosecutor on his case after he discovered her misconduct and learned that Edner intended to file a civil action against her.

Edner alleges that when Peterson-Haler took over as prosecutor of his criminal case, she continued the misconduct by, for example, interfering with his right to a speedy trial by filing multiple requests for a continuance, failing to report Meehan's misconduct, interfering with his right to representation by receiving forwarded confidential communications from his attorney, and by threatening to use fabricated evidence from his cell phone against him.  Compl. at 18.  Edner also seeks to hold Collins liable on the grounds that as the county attorney at the time, he was responsible for the misconduct of his employees.[9]  *Id.* at 18-19.

But prosecutors "acting as advocate for the state in a criminal prosecution" are entitled to absolute immunity.  *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) (citation omitted).  "Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process."  *Id.* In determining whether absolute immunity applies, courts consider "the nature of the function performed, not the identity of the actor who performed it."  *Id.*

The conduct at issue here falls largely into the category of "acts closely related [a prosecutor's] role as an advocate for the state."  *Id.* at 1266–67.  Meehan's decision to initiate criminal charges against Edner, the request that hearing dates be continued, the arguments prosecutors raised at bail hearings, and *how* prosecutors presented the state's

---

[9] It appears that none of these attorneys work for the Redwood County Attorney's Office any longer.  *See* Redwood County, Attorney's Office, *available at* https://redwoodcounty-mn.us/departments/attorney/ (last accessed Aug. 19, 2025).

case are all "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (concluding that absolute immunity applies to a prosecutor's decision to initiate and pursue prosecution). It is well-established, moreover, that absolute prosecutorial immunity extends to "the alleged knowing use of false testimony at trial and the alleged deliberate suppression of exculpatory evidence." *Burns v. Reed*, 500 U.S. 478, 485–86 (1991) (discussing the scope of the Supreme Court's holding in *Imbler*). Thus, to the extent that Edner claims that the prosecutors withheld exculpatory evidence, engaged in extra-judicial conversations, misrepresented evidence in court, made defamatory statements against him in court or otherwise engaged in misconduct or violated the rules of professional ethics, the prosecutors are nevertheless immune from suit for such conduct. *See id.* at 489-90 (concluding that prosecutors are absolutely immune from suit where they are alleged to have knowingly elicited misleading and defamatory testimony from witnesses).

To be sure, absolute immunity does not apply when a prosecutor gives legal advice to law enforcement. *Id.* at 496. Here, Edner claims that Meehan "conspired" with law enforcement to "draft an illegal and defective search warrant," "assisted the Redwood County Sheriff's Department in maliciously continuing an investigation against the Plaintiff after the arrest was already made," and conspired with law enforcement to "use fraudulent police reports." Compl. at 14 & 16. Edner further claims that Peterson-Haler "conspired with [law enforcement]" to ensure that a witness would be unavailable to testify. But these allegations of a conspiracy are wholly conclusory. Edner offers no facts establishing that any of the prosecutors gave law enforcement legal advice or that they

entered into some sort of agreement to withhold evidence or otherwise interfere with Edner's constitutional rights. Absent any such factual basis, Edner's allegations are "merely legal conclusions." As such, they are not entitled to the presumption of truth at the pleading stage. *See Iqbal*, 556 U.S. at 679 (legal conclusions are not entitled to the presumption of truth). Setting these allegations aside, Edner has failed to assert a plausible claim that the prosecutors engaged in any investigative or administrative conduct that would strip them of absolute prosecutorial immunity. The prosecutor-defendants, therefore, are entitled to absolute immunity, and the claims against them are dismissed on that basis.

### b. Judicial Officers (Category Two) Are Either Immune from Suit or Edner Has Failed to Assert a Plausible Claim for Relief Against Them

As a threshold matter, § 1983 provides for an action against a "person" for violating, under color of state law, the civil rights of another person. But the Redwood County District Courthouse is a *building*, not a person. The Redwood County District Courthouse, therefore, is not subject to suit, and any claims purportedly against it are dismissed. *See Jones v. Jackson Cnty. Courthouse*, No. 1:25-CV-00014-SPM, 2025 WL 740338, at *2 (E.D. Mo. Mar. 7, 2025) (concluding that a courthouse is not a person under § 1983).

For his part, Judge Patrick Rohland is plainly entitled to absolute judicial immunity. Judicial officers, such as Judge Rohland, are immune from suit, absent two, limited circumstances. *See Justice Network Inc. v. Craighead County*, 931 F.3d 753, 759-60 (8th Cir. 2019) (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam)). "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's

judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id*.  Neither of these two circumstances applies here.

Edner claims that Judge Rohland failed to rule on his motions and "conspired" with the prosecutors and defense attorneys.  Compl. at 33.  Moreover, Edner claims that Judge Rohland allowed a "fraudulent search warrant to be used against him," and intentionally granted continuances.  *Id.*  Edner, therefore, clearly takes issue with the decisions Judge Rohland made (or failed to make) in the course of his state criminal proceedings.  Yet, it is equally clear that Judge Rohland made those decisions in the normal course of his business as a judicial officer.  *See, e.g.*, *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012) ("Ruling on a motion is a normal judicial function.") (citing *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001)).  Edner may believe that Judge Rohland's rulings were wrong, or that he acted with malice and in a manner unbecoming of a judicial officer in issuing them, but neither error nor malice deprives judicial officers of immunity.  *See Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . .").  Further, Edner does not contend that Judge Rohland had no jurisdiction over his criminal proceedings.  Judicial immunity, therefore, bars Edner's claims for monetary damages against Judge Rohland.  *See P.G. v. Ramsey County*, 141 F. Supp. 2d 1220, 1231 (D. Minn. 2001) (finding plaintiff's claims for money damages against state trial court judge for conduct arising from child protection proceedings barred by absolute judicial immunity).  Edner's conclusory allegations that Judge Rohland conspired with

prosecutors and defense attorneys during his criminal proceedings does not change this result.  *See Schlegel v. Holder*, No. 13-Cv-3251 (RGK), 2014 WL 12607718, at *3 (D. Minn. May 21, 2024) (holding that conspiracy allegations do not defeat judicial immunity for conduct related to a general function normally performed by a judge) (collecting cases).

Similarly, for court clerks such as Patricia Amberg, the Redwood County Court Administrator, "absolute immunity has been extended to acts that are discretionary, taken at the direction of a judge, or taken according to court rules."  *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 928 (8th Cir. 2020) (citation omitted).  In this case, however, the Court does not need to consider whether Amberg has immunity for her actions because Edner's only allegation against Amberg is that Judge Rohland conspired with her (and several others) to "intentionally deprive [him] of his civil and constitutional rights." Compl. at 32.  As the Court understands it, Amberg, as court administrator, has been roped into Edner's allegation that even though he submitted motions for filing, Judge Rohland did not rule on them.  *Id.* at 32-33.  The problem with this allegation, of course, is that it does not assert any facts establishing what Amberg did, or failed to do, in violation of Edner's constitutional rights.  *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution.").  Edner, therefore, has failed to state a plausible § 1983 claim against Amberg.

In the category of "judicial defendants," this leaves Jodi Haen, a Redwood County court reporter.  Court reporters are not entitled to absolute quasi-judicial immunity because

"court reporters do not exercise the kind of judgment that is protected by the doctrine of judicial immunity,'" *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 437 (1993). Rather, Edner's claim against Haen is dismissed because he has failed to assert any facts that plausibly allege any constitutional violation.

Edner does assert that Haen participated in the conspiracy, involving Judge Rohland, the prosecutors, his defense attorneys, and law enforcement, to deprive him of his constitutional rights by charging him for transcripts of his court proceedings and then failing to produce a verbatim transcript of those proceedings. Compl. at 34-35. He asserts that the transcripts he received were incomplete and contained errors. *Id.* But he asserts no facts suggesting that this incomplete and inaccurate transcript, itself, violated his constitutional rights or was the basis for any alleged constitutional violation. Edner's claim against the court reporter, therefore, is dismissed as frivolous. *See Colyer v. Ryles*, 827 F.2d 315, 316 (8th Cir. 1987) (per curiam) (concluding that plaintiff failed to state claim for relief against the court reporter because the transcript at issue did not give rise to plaintiff's constitutional violations); *see also Gordon v. Ledbetter*, 642 F. App'x 637, 637 (8th Cir. 2016) (mem) (affirming summary judgment because "the record contains no explanation as to how the alleged [transcript] alterations affected the outcome of any of the proceedings at issue). Since Edner has failed to assert a plausible claim that either Amberg or Haen violated his constitutional rights, his civil conspiracy claim against them similarly fails. *See Tirado*, 521 F. Supp. 3d at 844. The judicial officer-defendants (Category Two) are therefore dismissed from this action.

### c. Edner Has Failed to Assert a Plausible § 1983 or Civil Conspiracy Claim Against the Criminal Defense Attorney Defendants (Category Four)

The defense attorney defendants (Category Four) are not subject to suit under § 1983. *See, e.g.*, *Polk County v. Dodson*, 454 U.S. 312, 318 (1981) ("[T]he Courts of Appeals are agreed that a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."); *see also Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (per curiam) (concluding that "[t]he attorneys who represented [the plaintiff], whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983") (citing *Holbird v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991) (per curiam) (same)).

The fact that several of the defense attorney defendants are public defenders (or court appointed criminal defense attorneys) does not change this result. Indeed, a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Dodson*, 454 U.S. at 325. In this case, Edner contends that the public defender defendants communicated attorney-client privileged information to the prosecutor, *see* Compl. at 16, and provided him with inaccurate (or incomplete) information regarding his right to challenge the sufficiency and veracity of the search warrants. *See id.* at 15, 45. But communicating with opposing counsel and providing legal advice (albeit potentially inaccurate or incomplete legal advice) are all functions normally performed by an attorney. The public defender defendants are thus not state actors for the purposes of § 1983 for this conduct and therefore not liable under § 1983.

While only state actors may typically be liable under § 1983, where "a civil conspiracy claim involves both state and private actors, the private party can be liable for conspiring with state officials if he was a willful participant in the conspiracy." *Tirado*, 521 F. Supp. 3d at 845 (citing *White*, 519 F.3d at 816). In such instances, "a plaintiff must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor, and the mutual understanding must be about the unlawful objective of a conspiracy." *Id.* (internal quotations and citations omitted) (cleaned up).

According to Edner, every defendant was involved in a wide-ranging, 10-year conspiracy to deprive him of his constitutional rights—the law enforcement officers who investigated the charges against him, the prosecutors who charged him and pursued those charges, the presiding judicial officer in the criminal case, the county court administrator, a court reporter, and the attorneys charged with defending his constitutional rights. The sole basis of this conspiracy, it seems, is that Edner (and his brother) was charged with crimes, the state pursued criminal charges, and his criminal defense attorneys were unsuccessful (despite multiple efforts) in persuading the presiding judge to dismiss the charges against him. But asserting the existence of a conspiracy falls far short of pleading a plausible conspiracy claim.

To plausibly plead such a conspiracy, a complaint must include "specific facts tending to show a meeting of the minds among the alleged conspirators." *Id.* (quoting *Lawrence v. City of St. Paul*, 740 F.Supp.2d 1026, 1049 (D. Minn. 2010)). "Allegations

23

that the parties had an opportunity to communicate or acted in a manner that was consistent with the existence of a conspiracy are insufficient alone to suggest a conspiracy." *Id*.

Here, Edner asserts *no* factual basis giving rise to a plausible claim that *any* of the criminal defense attorney defendants reached an agreement with *any* of the state actors to deprive him of his constitutional rights.  To the extent Edner claims the public defender defendants provided him with ineffective assistance of counsel by telling him that a *Franks* hearing challenging the veracity of a warrant "did not exist" and the prosecutor defendants knew about it (Compl. at 45), such allegations are insufficient to establish a conspiracy. *See Manis v Sterling*, 862 F.2d 679, 681 (concluding that allegations that judges knew that public defender was not "vigorously prosecuting" plaintiff's state post-conviction action but did nothing to rectify the situation were insufficient to establish a conspiracy) (citing *Deck v. Leftridge*, 771 F.2d 1168 (8th Cir. 1985) (per curiam)).  Ex parte communications with the presiding judicial officer by themselves, moreover, are insufficient to establish a plausible conspiracy.  *See DuBose v. Kelly*, 187 F.3d 999, 1003 (8th Cir. 1999) (finding ex parte communication with judge, on its own, insufficient for conspiracy claim unless judge promised to secure certain outcome).  Edner's conspiracy claim therefore fails as a matter of law and his § 1983 claims against the defense attorney defendants (private and court appointed alike) are dismissed.

One final housekeeping matter: Edner identifies the Redwood Count[y], State of Minnesota Board of Public Defense as a defendant to this action, *see* Compl. at 1, which this Court understands to be a reference to the Minnesota State Board of Public Defense. For ease of reference, this Court has included this defendant in the "defense attorney"

category of defendants (Category Four). But the Minnesota State Board of Public Defense is a state entity. *See* Minn. Stat. § 43A.02 subd. 25 (including within judicial-branch definition "Office of the State Public Defender"). As such, the Minnesota Board of Public Defense is entitled to sovereign immunity from suits "for any kind of relief." *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). Sovereign immunity, therefore, bars Edner's claims against this defendant.

### d. Law Enforcement Defendants (Category Three)

This leaves the law enforcement defendants—Redwood County Sheriff's Department and its employees, Sheriff Randy Hanson, Chief Deputy Mark E. Farasyn, Jason Jacobson, Mitch Zimmerman, Mike Campbell, and Mike Hubin; City of Morgan Police Department and its employee, Bostyn Thompson; and Kris Karlgaard, City of Breckenridge Police Department.

### (i)     Redwood County Sheriff's Department and the City of Morgan Police Department

As a preliminary matter, the Redwood County Sheriff's Department and the City of Morgan Police Department are not entities amenable to suit under § 1983. *De La Garza v. Kandiyohi Cty. Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities) (citing *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("[s]heriff's departments and police departments are not usually considered legal entities subject to suit"); *see also Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (concluding that

the city police department and city "paramedic services" are not "juridical entities suable as such")).  Edner's claims against these entities are therefore dismissed.

> **(ii)     Redwood    County    Sheriff    Randy Hanson and Redwood County Sheriff's Department    Chief    Deputy    Mark Farasyn**

Edner sues Redwood County Sheriff Randy Hanson and Redwood County Sheriff's Chief Deputy Mark Farasyn on the theory that, as supervisors, they are responsible for the purported misconduct of their subordinates.  *See* Compl. at 12.  Edner's claim fails.

"[N]either municipalities nor government officials may be held liable for unconstitutional conduct under a theory of respondeat superior."  *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Thus, there are only two ways for supervisors, such as Sheriff Hanson and Chief Deputy Mark Farasyn, to be liable under § 1983.  First, "a supervisor can be held liable 'if he directly participated in the constitutional violation' committed by someone he supervised."  *Cole v. Does*, 571 F. Supp. 3d 1033, 1042 (D. Minn. 2021) (quoting *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)).  "Second, a supervisor can be held liable 'if his failure to train or supervise the offending actor caused the deprivation.'"  *Id.* (quoting *Parrish*, 594 F.3d at 1001).

Edner claims that law enforcement included false information in their police reports and warrant applications, that the warrants themselves contained errors, that he was held in-custody for more than 48 hours following his arrest without appearing before a judge,

and that officers concealed exculpatory information.  *See* Compl. at 12-13.  But Edner does not claim, at any point, that either Sheriff Hanson or Chief Deputy Farasyn were directly involved in any of this misconduct.  He does not claim, for example, that Sheriff Hanson or Chief Deputy Farasyn personally ordered or directed their subordinates to violate his constitutional rights.  Accordingly, neither is liable under a "direct-participation" theory of supervisory liability.  *See Marsh v. Phelps County*, 902 F.3d 745, 754 (8th Cir. 2018) (where defendants neither "ordered nor directed" an inferior officer to violate the plaintiff's rights, "their alleged liability cannot be based on direct participation").

Nor are Sheriff Hanson and Chief Deputy Farasyn liable because their alleged "failure to properly supervise and train the offending employee[s] caused a deprivation of constitutional rights."  *Cole*, 571 F. Supp. 3d at 1044 (quoting *Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019)).  To recover for a failure to train or supervise, "a plaintiff must establish four elements: (1) the supervisor was on notice of a pattern of unconstitutional acts committed by subordinates; (2) the supervisor was deliberately indifferent to or tacitly authorized the pattern of unconstitutional acts; (3) the supervisor failed to take sufficient remedial action to address the pattern of unconstitutional acts; and (4) the supervisor's failure to remedy the pattern of unconstitutional acts proximately caused the plaintiff's injury."  *Id.* (internal quotations and citations omitted).

Edner has not plausibly pleaded even the first of these elements—namely, Edner has not established any facts showing that either one was on notice of a *pattern* of unconstitutional conduct by their subordinates. To qualify as a pattern, the "other misconduct must be very similar to the conduct giving rise to liability."  *S.M. v. Krigbaum*,

808 F.3d 335, 340 (8th Cir. 2015) (quoting *Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012)).  Here, by contrast, Edner asserts no facts suggesting that any of the Redwood County Sheriff's deputies identified as defendants to this action—Jason Jacobson, Mitch Zimmerman, Mike Campbell, and Mike Hubin—had committed misconduct similar to the purported misconduct at issue here, *i.e.*, drafting inaccurate police reports and search warrants and withholding evidence, let alone that there was a *pattern* of such misconduct and that the supervising officials (Sheriff Hanson and Chief Deputy Farasyn) were aware of the prior misconduct and resulting pattern.  *See S.M.*, 808 F.3d at 340 (describing the notice requirement as "rigorous" and explaining that "[a]llegations of generalized notice are insufficient").  Edner's § 1983 and civil conspiracy claims against Sheriff Hanson and Chief Deputy Farasyn are therefore dismissed.

> ### (iii)   Redwood County Sheriff's Deputies Mitch Zimmerman, Mike Campbell, Mike Hubin, and City of Breckenridge Police Officer Kris Karlgaard

The Court turns now to Edner's claims against the law enforcement officials who participated in the investigation that led to the criminal charges against him—namely, Redwood County Sheriff's Deputies Zimmerman, Campbell, and Hubin,  and City of Breckenridge Police Officer Karlgaard.

### (a) Officer Kris Karlgaard

Aside from identifying Officer Kris Karlgaard as a defendant to this action, Edner only mentions him once in his 56-page complaint.  Specifically, Edner claims that Deputy Jacobson contacted Breckenridge Police Officer Kris Karlgaard and directed him to

threaten and intimidate Edner's grandmother using a "fraudulent" arrest warrant. Compl. at 6. Edner has failed to assert a plausible constitutional violation against Karlgaard. As a threshold matter, to the extent that Edner alleges that Officer Karlgaard verbally threatened *his grandmother*, Edner has no authority to bring such a claim on her behalf. *See* 28 U.S.C. § 1654 (in United States courts "the parties may plead and conduct *their own* cases personally or by counsel") (emphasis added); *see also Jones ex rel. Jones v. Corr. Med. Servs., Inc.*, 401 F.3d 950, 952 (8th Cir. 2005) ("a non-attorney . . . may not engage in the practice of law on behalf of others"). In any event, verbal threats by themselves, are not actionable under § 1983. *See Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) ("Verbal abuse is normally not a constitutional violation.") (citing *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985)); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983."); *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). And Edner asserts no facts showing that these threats implicated his constitutional rights. The claims against Officer Kris Karlgaard are therefore dismissed.

### (b) Redwood County Sheriff's Deputies Mitch Zimmerman, Mike Campbell, and Mike Hubin

Edner's claims against Deputies Zimmerman, Campbell, and Hubin are substantially the same—namely, he alleges that they conspired with others to falsify police reports, failed to follow procedure, failed to properly investigate, failed to report the misconduct of others, and improperly interrogated a minor. *See* Compl. at 11-12. These allegations, like most of Edner's Complaint, are conclusory, devoid of any facts describing,

29

for example, what was falsified, how the officers failed to properly investigate, or what they did in their interrogation of a minor that was improper.  Absent such facts, Edner's claims against these defendants fail to cross the plausibility threshold and they are dismissed for failure to state a plausible claim for relief.

> ### (iv)    Jason Jacobson, Redwood County Sheriff's Department, and Bostyn Thompson, City of Morgan Police Department

Finally, for the limited purposes of § 1915(e) review, the claims against Defendants Jason Jacobson of the Redwood County Sheriff's Department, and Bostyn Thompson of the City of Morgan Police Department, may proceed.  Edner has asserted numerous allegations against them based on a hodgepodge of alleged conduct.  Compl. at 4–11.  The Court is skeptical of these claims, and the state court record may readily dispose of them. Nevertheless, at this time, lacking the pertinent portions of the state court record, and based on this limited review, they may proceed.  Edner is cautioned, however, that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant[s] may choose to bring."  *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

## IV.    Conclusion

In sum, Judge Rohland, the prosecutor-defendants (Category One), and the Minnesota State Board of Public Defense are entitled to immunity.  The claims against them for monetary damages are therefore dismissed.  The claims against the remaining judicial officer-defendants (Category Two), the remaining criminal defense attorney-defendants (Category Four), and Redwood County Sheriff Randy Hanson, Redwood

County Sheriff's Chief Deputies Mark Farasyn, Mike Hubin, Mike Campbell, and Mitch Zimmerman, and Breckenridge Police Officer Kris Karlgaard, are dismissed for failure to state a plausible claim for relief. The claims against Defendants Jason Jacobson of the Redwood County Sheriff's Department, and Bostyn Thompson of the City of Morgan Police Department, may proceed.

## V.    Order

Based on the submission and the entire file and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The Court respectfully declines to adopt the Report and Recommendation of United States Magistrate Judge Leo I. Brisbois [Doc. No. 20];

2. Plaintiff Ryan C. Edner's request to further stay these proceedings [Doc. No. 21], is **DENIED**;

3. The following Defendants are **DISMISSED WITHOUT PREJUDICE** from this action pursuant to 28 U.S.C. § 1915(e)(2): Redwood County District Attorney's Office; Redwood County District Courthouse; Redwood County Sheriff's Department; Redwood Count[y], State of Minnesota Board of Public Defenders; City of Morgan Police Department; Judge Patrick Rohland; Steven Collins, District Attorney; Jenna Peterson-Haler, Assistant District Attorney; Kelly Meehan, Assistant District Attorney; Joel Solie, Public Defender, Solie Law Office; Erica Allex, Public Defender; Patricia Amberg, Redwood County Court Administrator; Jodi Haen, Redwood County Court Reporter; Sheriff Randy Hanson, Redwood County Sheriff's Department; Chief Deputy Mark E. Farasyn,

Redwood County Sheriff's Department; Mitch Zimmerman, Redwood County Sheriff's Department; Mike Campbell, Redwood County Sheriff's Department; Mike Hubin, Redwood County Sheriff's Department; Kris Karlgaard, City of Breckenridge Police Department; Attorney Eric Olson, Olson Defense, PLLC; Attorney Ryan Garry, Ryan Garry, LLC; Attorney Paul Hunt, Karkella, Hunt & Cheshire, PLLP; and Attorney Megan Burkehammer, Thornton Law Office.

Dated:  August 20, 2025                    s/Susan Richard Nelson
                                           SUSAN RICHARD NELSON
                                           United States District Judge