UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ryan C. Edner,<br><br>Plaintiff,<br><br>v.<br><br>Jason Jacobson, Redwood County Sheriff's Department, and Bostyn Thompson, City of Morgan Police Department,<br><br>Defendants. | Case No. 19-cv-2486 (SRN/LIB)<br><br><br>ORDER |

Ryan C. Edner, 416 4th Ave. N., Wahpeton, ND 58075, Pro Se Plaintiff

Riley P. Boehm and Vicki A. Hruby, Jardine, Logan & O'Brien, PLLP, 576 Bielenberg Dr., Ste. 100, Woodbury, MN 55125, for Defendants

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss [Doc. No. 76] filed by Defendants Jason Jacobson and Bostyn Thompson. For the reasons below, the Court grants the motion.

## I. BACKGROUND

### A. Procedural History

Plaintiff Ryan C. Edner filed this action against Defendants Jason Jacobson of the Redwood County Sheriff's Department, and Bostyn Thompson of the City of Morgan Police Department, alleging that they engaged in a civil conspiracy to violate his constitutional rights

under 42 U.S.C. § 1983.  Plaintiff's claims relate to an underlying criminal case in Redwood County, Minnesota, *State of Minnesota v. Edner*, No. 64-CR-15-649, in which the state charged Mr. Edner with drug possession offenses.  While the criminal case was pending in state court, Plaintiff initiated this federal case against numerous defendants who were involved in the state court proceedings, including prosecutors, judicial officials, law enforcement officers, and defense attorneys.  (*See* Compl. [Doc. No. 1] at 1.)  The federal case was stayed for several years while the criminal case proceeded in state court, and in August 2025, the stay was lifted due to the dismissal of charges in state court.[1]  (*See* Dec. 1, 2020 Order [Doc. No. 15]; Aug. 20, 2025 Order [Doc. No. 22] at 9–10.)

In connection with Plaintiff's Motion to Proceed In Forma Pauperis, the Court conducted a review of his Complaint pursuant to 28 U.S.C. § 1915(e).  On August 20, 2025, it dismissed his claims, in large part, for failure to state a claim on which relief can be granted. (Aug. 20, 2025 Order at 11–12.)  At that time, the Court did not dismiss the claims against the two remaining Defendants, Investigator Jacobson and Morgan Police Chief Thompson, both law enforcement officers.  While the Court was skeptical of Mr. Edner's claims against them, it lacked pertinent portions of the state court record with which to evaluate the viability of Plaintiff's claims.  (*Id.*)

Defendants filed the instant Motion to Dismiss shortly thereafter, attaching state court records as exhibits.

---

[1] After years of delays in the state court proceedings, the state dismissed the charges against Mr. Edner shortly before trial because its evidence no longer contained any reportable levels of a controlled substance.  (*See* Aug. 20, 2025 Order at 8.)

### B. Relevant Factual Background

The Court incorporates by reference the detailed facts set forth in its August 20, 2025 Order. The facts were taken from the state court record in *State of Minnesota v. Edner*, No. 64-CR-15-649 (Minn. Dist. Ct.).

On September 2, 2015, the Redwood County Sheriff's Office received a report that Edner's brother, Eric J. Edner,[2] who was twenty-seven years old at the time, was in a relationship with a juvenile girl. (Aug. 20, 2025 Order at 3.) Following this report, law enforcement obtained a search warrant to search devices located at a residence on 4th St. in Morgan, Minnesota, at which brothers Ryan and Eric Edner resided ("Edner residence"). (*Id.*; *see also* Boehm Decl. [Doc. No. 79], Ex. 1 (Sept. 5, 2015 Search Warrant (State Ct. Index #45)).) The search warrant authorized the seizure of a variety of items potentially used to download or store images of underage subjects, including computers and cell phones. (Boehm Decl., Ex. 1 (Sept. 5, 2015 Search Warrant).)

On September 6, 2016, Police Chief Thompson, Investigator Jacobson, a sheriff's deputy, and other law enforcement officers executed the search warrant. (Aug. 20, 2025 Order at 3.) Eric Edner, Plaintiff's brother, was outside the residence, entering a Kia passenger vehicle. (*Id.*) Officers served the search warrant, read Eric Edner his *Miranda* rights, and Police Chief Thompson interviewed him. (*Id.*)

---

[2] For clarity, this Court will refer to Eric Edner by his first and last name and Plaintiff by "Plaintiff" or Mr. Edner, unless otherwise noted.

Plaintiff was inside the residence. (*Id.*) After law enforcement officers located several loaded handgun magazines in the entryway, they secured Plaintiff in the back of a squad car during the search of the residence. (*Id.*) Officers discovered drug paraphernalia, including glass pipes with marijuana residue and marijuana grinders, and they located a handgun in the dining room. (*Id.* at 4.) During the search of a room that Plaintiff had previously identified as his bedroom, officers found a 41-quart tub of partially processed marijuana plants, and during a search of the basement, Investigator Jacobson found green leaves and residue "consistent with marijuana located on blankets covering a drum set." (*Id.*)

Officers then drafted an application for another warrant to search the residence, the Kia, a 2002 Ford Ranger, and "pagers, cellular telephones and information contained therein" for evidence of controlled substance crimes. (*See* Boehm Decl., Ex. 2 (Sept. 6, 2015 Search Warrant (State Ct. Index #61)).) The warrant application was approved and executed that day. *Id.* During the search of Eric Edner's phone, law enforcement found text messages consistent with a marijuana growing operation. (August 20, 2025 Order at 4.) Officers also found additional evidence of guns, marijuana, and drug paraphernalia during the search of the Kia and Ford Ranger, including a "cased AR-15 style .22 caliber rifle with 4 loaded magazines" next to a "black ski mask, a Kevlar (bullet proof) vest, and a dark colored sweatshirt" and "an ammunition bag containing numerous rounds of ammunition." (*Id.*)

On September 7, 2015, officers also obtained a search warrant for the phone located in Plaintiff's bedroom. (Boehm Decl., Ex. 3 (Sept. 7, 2015 Warrant (State Ct. Index #59)).)

The Redwood County Attorney's Office filed a criminal complaint charging Mr. Edner with two counts of possession of a controlled substance in the fifth degree in violation of Minn. Stat. § 152.025 subd. 2(a)(1), commission of a crime while wearing or possessing a bullet-resistant vest in violation of Minn. Stat. § 609.486, carrying a weapon without a permit in violation of Minn. Stat. § 624.714 subd. 1a, and possession of ammunition or any firearm by a user of a controlled substance in violation of Minn. Stat. § 624.713 subd. 1(10)(iii).  (Boehm Decl., Ex. 18 (Redacted Criminal Compl. (State Ct. Index #17)).)

The case never made it trial due to a combination of factors, including multiple changes in defense counsel, Mr. Edner exercising his constitutional right to challenge the state's case, multiple trial continuances at Mr. Edner's request to re-litigate evidentiary issues, a change in the presiding judge, and Mr. Edner's failure to appear in court.  (*See* Aug. 20, 2025 Order at 5; *see also* Boehm Decl., Ex. 4 (Sept. 14, 2015 Criminal Compl. (State Ct. Index #16)); *id.*, Ex. 18 at 3 (Redacted Criminal Compl. (State Ct. Index #17)).)

On multiple occasions in state court, Mr. Edner sought to suppress evidence by challenging the validity of the search warrants, the scope of the searches, probable cause for his arrest, and other alleged "misconduct" committed by Investigator Jacobson and Police Chief Thompson.  (*See* Boehm Decl., Ex. 5 (Apr. 6, 2016 Order (State Ct. Index #63)); *id.*, Ex. 6 (July 28, 2017 Order (State Ct. Index #108)); *id.*, Ex. 7 (Dec. 3, 2021 Order (State Ct. Index #188)).)  Mr. Edner was represented by counsel throughout the majority of his criminal proceedings.  (*See* Aug. 20, 2025 Order at 5–6).)  The state court rejected all of Mr. Edner's claims.  (*See* Boehm Decl., Ex. 5 (Apr. 6, 2016 Order (State Ct. Index

#63)); *id.*, Ex. 6 (July 28, 2017 Order (State Ct. Index #108)); *id.*, Ex. 7 (Dec. 3, 2021 Order (State Ct. Index #188)).)

### 1. First Round of Criminal Motions in State Court

On January 25, 2016, at a contested omnibus hearing in state court, Mr. Edner's counsel had the opportunity to present evidence and witness testimony concerning the events preceding the contested search and seizure of Mr. Edner's property, including the cross examination of Investigator Jacobson and Chief Thompson. (Boehm Decl., Ex. 5 Apr. 6, 2016 Order (State Ct. Index #63)) at 1; *id.*, Ex. 10 (Jan. 25, 2016 Hr'g Tr.)). Specifically, Mr. Edner moved to dismiss the charges, arguing that the warrant lacked probable cause, that law enforcement acted unreasonably in the execution of the warrant, and that there was no probable cause to support the charges. (Boehm Decl., Ex. 5 (Apr. 6, 2016 Order (State Ct. Index #63)) at 1.) On April 6, 2016, the court denied Mr. Edner's motion to dismiss the charges, and rejected his arguments, finding that: (1) the original search warrant was supported by probable cause; (2) law enforcement officers did not act unreasonably in conducting a search of Mr. Edner's bedroom; (3) probable cause existed for all counts; and (4) officers acted reasonably in executing the search warrants. (*Id.* at 4, 11.) The court found the search warrant's narrative established a fair probability that contraband or evidence of a crime would be found in the place to be searched, that there was a nexus between the place to be searched and the items sought, and that the warrant itself was supported by probable cause. (*Id.* at 8.)

## 2. Second Round of Criminal Motions in State Court

After Mr. Edner obtained new counsel in December 2016, his counsel filed a new motion to dismiss for lack of probable cause, along with a motion to suppress evidence. (Aug. 20, 2025 Order at 6.)  Mr. Edner argued  there was no probable cause for the search of his 2002 Ford Ranger and 2008 Kia, as well as no probable cause for any of the charges, and that Chief Thompson had "misrepresented information of the reporting party, misrepresented text messages, and misrepresented the relationship between [Eric] Edner and [juvenile female] in the September 5, 2015 search warrant." (*See* Boehm Decl., Ex. 6 (July 28, 2017 Order (State Ct. Index #108)) at 1.)  Relying on police reports and investigative materials, submitted to the court by stipulation of the parties, as well as testimony from the January 25, 2016 omnibus hearing, the court rejected Mr. Edner's second round of challenges, finding the search warrants were supported by probable cause and that Chief Thompson's alleged misrepresentations were not shown to be deliberately false or made in reckless disregard for the truth.  (*Id.* at 1 & n.1, 6, 8–11.)  The alleged misrepresentations included a statement in a search warrant affidavit, reporting that the juvenile at the Edner residence had engaged in "limited sexual contact" with [Eric] Edner" that included "kissing, hugging, and holding hands." (*Id.* at 11–13.)  The court found no intimation that the affidavit exaggerated or misrepresented the nature of the contact that the juvenile had disclosed to Investigator Jacobson.  (*Id.*)

While the search warrant affidavit did not specifically identify the source of the information, it indicated that a third party informed law enforcement that the juvenile "had admitted to having a sexual relationship with 28-year-old Eric Edner." (*Id.*)  The court

found that the search warrant affidavit did not misrepresent the nature of the initial report and "was necessarily considered prior to signing." (*Id.*)

Moreover, the court observed that the search warrant affidavit also identified evidence that corroborated the initial report, including text messages that were "sexual in nature," and related information. (*Id.* at 11–13.)

Finally, based on the court's review of the search warrants, police reports, complaint, and testimony, it found there was "substantial evidence, admissible at trial, adequate to bring the charges within reasonable probability." (*Id.* at 9.)

After failing to appear at hearings in September and October of 2017, the state court issued a warrant for Mr. Edner's arrest. (Aug. 20, 2025 Order at 6.)

In 2019, Mr. Edner filed the instant matter against numerous defendants, including the state court judge presiding over his criminal proceedings. Because of the conflict of interest, the presiding judge recused himself from the criminal proceedings and the case was reassigned to a new state court judge, Judge Michelle Dietrich. (*Id.* at 7.)

The warrant for Mr. Edner's arrest was served in August 2020. (*Edner I* (State Ct. Index #133).)

### 3. Third Round of Criminal Motions in State Court

In October 2021, Judge Dietrich held a reopened omnibus hearing at which Mr. Edner raised nine claims to support dismissal of the criminal charges. (Boehm Decl., Ex. 7 (Dec. 3, 2021 Order (State Ct. Index #188)) at 1; *id.*, Ex. 9 (Mot. to Dismiss (State Ct. Index #164)).) His claims were nearly identical to the allegations that Plaintiff asserts in the Complaint in this civil action. (*Compare* Compl., *with* Boehm Decl., Ex. 9 (Mot. to

8

Dismiss (State Ct. Index #164)).)  Judge Dietrich denied Mr. Edner's criminal motions. (Boehm Decl., Ex. 7 (Dec. 3, 2021 Order (Index #188)) at 1–2.)  Among her findings, Judge Dietrich found Mr. Edner's allegations of "multiple acts of fraud" and "misconduct" to be "conclusory or without factual support."  *Id.*  Specifically, she found the following allegations lacked merit or factual support:  (1) Investigator Jacobson and Chief Thompson drafted and executed a search warrant bearing a judge's forged signature; (2) Investigator Jacobson accessed Eric Edner's cell phone without a warrant; (3) Investigator Jacobson conspired with prosecutors and Chief Thompson to manufacture and fabricate evidence; (4) third-party hearsay was relied upon in the underlying warrant applications; (5) material information was withheld from the search warrant affidavit; (6) there was a pattern and practice of misconduct, including conflicts of interest or misrepresentation; and (7) false evidence was presented at pretrial hearings.  (*Id.* at 5–8, 17.)

In addition, Judge Dietrich rejected the due process challenges that Mr. Edner also raises in this action, stating that Mr. Edner had had both a meaningful time and manner in which to argue his case.  (*Id.* at 19–20.)  Judge Dietrich observed that Mr. Edner had been afforded ample opportunities for oral and written argument.  (*Id.*)  The court found that Mr. Edner's "due process rights have not been violated," nor were they violated under color of law.  (*Id.*)

The criminal case then proceeded toward trial.  As noted earlier, the prosecutor dismissed criminal charges on the eve of trial in August 2024 because, as a result of delay, there was no longer any reportable level of THC in the State's evidence.  (Bohem Decl., Ex. 11 (Dismissal of Criminal Compl. (State Ct. Index #436)) at 3–4.)

9

### C. Parties' Arguments

In their Motion to Dismiss, Investigator Jacobson and Chief Thompson argue the following: (1) Mr. Edner lacks standing to assert claims on behalf of his brother and/or the juvenile victim; (2) collateral estoppel bars Mr. Edner's claims; (3) the law of the case doctrine bars Mr. Edner's claims; (4) Mr. Edner's claims fail on the merits; and (5) his bare factual allegations are not actionable or are conclusory, and must be dismissed. (Defs.' Mem. [Doc. No. 78] at 14–33; *see also* Defs.' Reply [Doc. No. 93] at 1–11.)

In response, Mr. Edner argues that this Court should not consider the state court record, or Defendants' "interpretation" of the state court record, which he contends is improper under Rule 12. (Pl.'s Opp'n [Doc. No. 92-1] at 3–4.) Even if the Court considers the state court record, Mr. Edner describes Defendants' exhibits as "selective" and incomplete. (*Id.* at 4.)

Further, Mr. Edner asserts that collateral estoppel does not bar his claims for the following reasons: (1) Defendants have not "cleanly established finality" because the state's case ended in dismissal; (2) the issues are not identical; and (3) Defendants have not established that Plaintiff had a full and fair opportunity to be heard. (*Id.* at 5–6.)

Mr. Edner also argues that the law-of-the-case doctrine does not bar the claims against Defendants because the Court, in its August 20, 2025 Order, allowed them to proceed. (*Id.* at 7.) He contends that he should be allowed to proceed because he has plausibly alleged claims against both Defendants. (*Id.* at 8–9.)

As to standing, Mr. Edner clarifies that he seeks relief for injuries that he personally suffered, and he only includes allegations concerning his brother and a juvenile to "supply context." (*Id.* at 5.)

## II.   DISCUSSION

### A. Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true and views those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.*

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must allege facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although pro se complaints are to be construed liberally, they still must allege sufficient facts to support the proposed claims, and the Court cannot "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).

Ordinarily, the Court does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). However, without converting the motion to a motion for

11

summary judgment, the Court may "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (internal quotation marks and citation omitted).

Here, the Court considers Mr. Edner's allegations in the Complaint, along with the state court records, which are public records. *See, e.g., Smith v. Reynolds*, 139 F.4th 631, 636 n.4 (8th Cir. 2025) (taking judicial notice of underlying state agreements as public records on appeal of Rule 12(b)(6) dismissal) (citing *Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005) (noting that courts "may take judicial notice of judicial opinions and public records")); *see also Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (finding it proper for district court to rely on state court record in Rule 12(b)(6) motion because "court records are public records."). Moreover, all of the allegations in Mr. Edner's Complaint focus on the underlying state court investigation and prosecution. (Compl. at 4–49.) Under these circumstances, it is proper to consider the state court records on Defendants' Motion to Dismiss. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (finding, on motion for judgment on the pleadings in malicious prosecution action, district court properly relied on transcript from underlying Lanham Act lawsuit, as district courts may consider materials that are part of the public record as well as materials necessarily embraced by the pleadings). Indeed, in the Court's earlier review of the pleadings in connection with Mr. Edner's in forma pauperis application, it referenced portions of the state court record. (*See* Aug. 20, 2025 Order at 11–12.)

Mr. Edner objects to the Court's consideration of the state court record for a variety of

12

reasons. First, he argues that the Court should not consider "[Defendants'] interpretation of the criminal record as conclusive proof that the warrants were lawful, the investigation was proper, probable cause existed, [and] Ryan's detention was justified." (Pl.'s Opp'n at 3–4.) Further, he asserts that a Rule 12 motion "is not a vehicle for resolving disputed historical facts in Defendants' favor." (*Id.* at 3.)

The state court's factual findings and legal conclusions are not disputed historical facts, and Mr. Edner does not challenge their authenticity. Instead, he continues to challenge the rulings themselves. For example, he points to the omnibus hearing transcript from January 25, 2016, (Pl.'s Ex. A (Jan. 25, 2016 Hr'g Tr. Excerpts [Doc. No. 92-2])), arguing that it "contains language that the electronic-search language was 'boiler plate' and 'often cut and paste,' and testimony or questioning reflecting that no actual photo or video exchange had been clearly identified." (Pl.'s Opp'n at 4.) In addition, Mr. Edner questions whether the state court applied the proper "four corners" review of the search warrants. (*Id.*) The state court had the opportunity to consider Mr. Edner's arguments and rejected them. The fact that Mr. Edner does not agree with the state court rulings does not alter their legal effect.

Mr. Edner also argues that the state court record cannot be relied upon because Defendants 'selectively packaged' it. (*Id.*) He alludes to his subsequent requests to obtain access to state court judicial branch and executive branch investigative records, the latter of which was denied without prejudice. (*Id.* at 1, 4–5.) Mr. Edner contends that the Defendants' collateral estoppel argument "implicitly depends" upon the withheld material. (*Id.*) The Court disagrees. As the Court explains in its discussion of collateral estoppel, the Court need not review every underlying exhibit that was before the state court, or revisit arguments about

13

admissibility or probable cause.  At issue here is the preclusive effect, if any, of the state court *rulings* themselves.

### B.  Standing to Assert Non-Party Claims

As noted earlier, Defendants move to dismiss any claims that Plaintiff asserts on behalf of his brother, Eric, and/or the minor who maintained a relationship with Eric.  (Defs.' Mem. at 14–15.)

Article III of the Constitution limits federal jurisdiction to "cases or controversies." *Auer v. Trans Union, Ltd. Liab. Co.*, 902 F.3d 873, 877 (8th Cir. 2018) (quoting *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011)). If a plaintiff lacks Article III standing, the district court lacks subject matter jurisdiction.  *Id.* To establish standing under Article III, a plaintiff must have: (1) "suffered an injury in fact," (2) "that is fairly traceable to the challenged conduct of the defendant," and (3) "that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)).  To satisfy the injury-in-fact requirement, a plaintiff must show an injury that is "concrete and particularized" and that affects the plaintiff in a "personal and individual way." *Spokeo*, 578 U.S. at 339 (citation omitted).  Accordingly, Mr. Edner cannot assert claims on behalf of his brother and the minor.  While Mr. Edner contends that he only seeks relief for injuries that he personally sustained, (Pl.'s Opp'n at 5–6), to remove any ambiguity, the Court grants Defendants' Motion to Dismiss in this regard.  The Court therefore dismisses any claims that Plaintiff brought on behalf of Eric Edner and the minor with whom he had a relationship, as he lacks standing.

### C.  Collateral Estoppel

Defendants argue that collateral estoppel, or issue preclusion, bars Plaintiff's claims against them.  (Defs.' Mem. at 15–21; Defs.' Reply at 1–7.)  The Supreme Court has held that collateral estoppel may apply when § 1983 plaintiffs seek to re-litigate in federal court issues that were decided against them in state criminal proceedings.  *Allen v. McCurry*, 449 U.S. 90, 103 (1980).  A federal court must accord the same preclusive effect to a state court judgment that it would receive in the courts of the state from which the judgment originated.  28 U.S.C. § 1738; *Knutson v. City of Fargo*, 600 F.3d 992, 996 (8th Cir. 2010).  Thus, "Minnesota rules of collateral estoppel apply in federal court cases involving a prior Minnesota state court judgment."  *Final Exit Network, Inc. v. Ellison*, 370 F. Supp. 3d 995, 1016 (D. Minn. 2019) (citation omitted).

Under Minnesota law, collateral estoppel "precludes the relitigation of issues that are identical to issues previously litigated and that were necessary and essential to the prior judgment."  *Wong v. Minnesota Dep't of Hum. Servs.*, 820 F.3d 922, 933 (8th Cir. 2016) (citing *Minneapolis Cmty. Dev. Agency v. Buchanan*, 268 F.3d 562, 566 (8th Cir. 2001)).  It applies "where: (1) the issues are identical to those in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party in the previous action; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issues."  *Id.* at 933–34.

These conditions are met here.  Mr. Edner was a party to the state criminal proceedings, and had a full and fair opportunity to be heard on factual and legal issues concerning the validity of the search warrants, alleged misrepresentations in the warrants,

15

alleged deficiencies in the investigation, alleged improper interrogation of a minor, alleged perjury, alleged fraud in police reports, an alleged search of a cell phone without a warrant, alleged tampering with evidence, alleged improper handling of evidence, alleged improper reliance on hearsay, and probable cause for his arrest. (*See* Boehm Decl., Exs. 5–10.) The Redwood County District Court held hearings involving these issues on January 25, 2016, April 24, 2017, and October 21, 2021. (*Id.*, Exs. 5–7*; see also id.*, Exs. 12–17.) The state court rejected each of his arguments. (*See id.*, Ex. 5 (Apr. 6, 2016 Order); *id.*, Ex. 6 (July 28, 2017 Order); *id.*, Ex. 7 (Dec. 3, 2021 Order).) Mr. Edner attempts to distinguish the instant § 1983 action from the "broader" state court proceedings, arguing that it involves only "Ryan-specific questions." (Pl.'s Opp'n at 6.) The Court disagrees. The underlying criminal orders all addressed "Ryan-specific questions" in a case that listed him as the sole defendant, and focused on *his* suppression motions related to the search of his bedroom, whether the original warrant was supported by probable cause, whether there was probable cause to search the Ford Ranger and the Kia, whether Chief Thompson made various misrepresentations, and whether there was probable cause for all charges against him. (*See* Boehm Decl., Ex. 5 (Apr. 6, 2016 Order); *id.*, Ex. 6 (July 28, 2017 Order); *id.*, Ex. 7 (Dec. 3, 2021 Order); *id.*, Ex. 8 (Feb. 17, 2017 Order).)

Mr. Edner also argues that it is improper to consider the state court rulings because the charges against him were ultimately dismissed. (Pl.'s Opp'n at 6.) In *Crumley v. City of St. Paul*, 324 F.3d 1003 (8th Cir. 2003), the plaintiff filed a § 1983 lawsuit related to his underlying criminal prosecution, for which he was acquitted. The Eighth Circuit found that the Minnesota state court finding of probable cause to support Crumley's arrest "collaterally

estopped a contrary ruling in Crumley's § 1983 action." *Id.* at 1006–07 (citing *Cota v. Chapa*, 2 F. App'x 621 (8th Cir. 2001) (affirming district court's holding that plaintiff was collaterally estopped from challenging Minnesota state court's finding of probable cause for arrest, even though plaintiff was subsequently acquitted of crime for which he was arrested)). The Eighth Circuit has observed that "[p]robable cause for arrest and probable cause for a search are . . . often litigated in a suppression hearing of a state criminal case to determine whether evidence seized in a wrongful arrest or search must be suppressed. Such litigation may serve to collaterally estop a litigant from asserting the claim in a § 1983 action." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993); *see also Wells v. Brigman*, No. 3:07CV00025 SWW, 2008 WL 536614, at *3 (E.D. Ark. Feb. 25, 2008) ("Collateral estoppel, or issue preclusion, may apply when a § 1983 plaintiff attempts to re-litigate in federal court issues decided against him in state criminal proceedings.").

Here, while charges were ultimately dismissed against Mr. Edner, the dismissal occurred due to the degradation of evidence, not based on any of the legal issues that are common to both the state criminal proceeding and the instant § 1983 action. (Bohem Decl., Ex. 11 (Dismissal of Criminal Compl. (State Ct. Index #436)) at 3–4.) The state court decisively ruled against Mr. Edner not just once, but three times, on the same issues that he asserts in his § 1983 action. (*See* Boehm Decl., Ex. 5 (Apr. 6, 2016 Order); *id.*, Ex. 6 (July 28, 2017 Order); *id.*, Ex. 7 (Dec. 3, 2021 Order).)

Accordingly, the Court finds that the state court rulings collaterally estop Mr. Edner's claims in his § 1983 action and they are dismissed on this basis with prejudice.

17

### D. Failure to State a Claim on the Merits

Even absent collateral estoppel, Defendants argue that Plaintiff fails to state a claim on the merits, and his claims must be dismissed on this basis. (Defs.' Mem. at 22–33.) In addition, they assert that Mr. Edner has essentially waived his objection to this basis for dismissal by failing to substantively respond.

Indeed, a party's failure to present specific arguments in opposition to a motion to dismiss may result in waiver of those issues. *Tate v. Scheidt*, 15-3115 (WMW/JSM), 2016 WL 7155806, at *6 (D. Minn. Oct. 7, 2016), *report and recommendation adopted*, 15-CV-3115 (WMW/BRT), 2016 WL 7175593 (D. Minn. Dec. 7, 2016) (quoting *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir. 1995) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action. The federal courts will not invent legal arguments for litigants.")). The Court proceeds to address the merits of Mr. Edner's claims, but agrees with Defendants that he failed to substantively respond to their arguments for dismissal on this basis.

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege a violation of a constitutional right committed by a person acting under color of state law." *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006). The Court therefore addresses whether Mr. Edner's claims meet that standard.

#### 1. Perjury Claims

Mr. Edner alleges that Investigator Jacobson committed perjury at a state court hearing by "contradicting his own police reports as well as the audio and video evidence," and that Chief Thompson "confessed via testimony in court" that Investigator Jacobson instructed him

18

on how to draft and execute the first search warrant, and that he was "aware that the search warrant was written for a sexual misconduct allegation and [was] in no way related to child pornography nor did he have any evidence or allegations of child pornography." (Compl. at 4, 10.) Defendants contend that Mr. Edner's perjury claims must be dismissed because they are entitled to absolute immunity for any testimony given in court. (Defs.' Mem. at 22–23.)

Mr. Edner concedes that "witnesses are generally immune from damages liability for [providing false testimony in court]." (Pl.'s Opp'n at 9) (citing *Briscoe v. LaHue*, 460 U.S. 325–26, 335–36 (1983)). However, he argues that his core allegations concern out-of-court conduct, such that "[a]ny testimony-only theory can be narrowed or disregarded without dismissing the action." (*Id.*)

The Supreme Court has explained that

In *Briscoe*, . . . this Court held that the immunity of a trial witness sued under § 1983 is broader: In such a case, a trial witness has absolute immunity with respect to any claim based on the witness' testimony. When a witness is sued because of his testimony, the Court wrote, " the claims of the individual must yield to the dictates of public policy." Without absolute immunity for witnesses, the Court concluded, the truth-seeking process at trial would be impaired. Witnesses "might be reluctant to come forward to testify," and even if a witness took the stand, the witness "might be inclined to shade his testimony in favor of the potential plaintiff" for "fear of subsequent liability."

*Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (quoting *Briscoe*, 460 U.S. 332–33). Courts have granted absolute immunity for hearing testimony, *Stanley v. Hutchinson*, 12 F.4th 834, 844 (8th Cir. 2021), and deposition testimony. *Myers v. Bull*, 599 F.2d 863, 866 (8th Cir. 1979). Accordingly, Mr. Edner's perjury claims are barred by absolute immunity, and because no amount of "narrowing" by repleading will overcome this result, they are dismissed.

19

### 2. Fourth Amendment Claims

As noted, Mr. Edner alleges Fourth Amendment violations based on his arrest and the underlying searches.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" and that "no warrants shall issue, but upon probable cause supported by Oath or affirmation." U.S. Const. Amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). Probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit." *United States. v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000). A search is reasonable if the officer has a valid search warrant or if the search fits within a specific warrant exception. *United States v. DE L'Isle*, 825 F.3d 426, 431 (8th Cir. 2016). The state court found on multiple occasions that probable cause existed for Mr. Edner's arrest and the searches were conducted within the scope of the authorized warrants. (*See* Boehm Decl., Ex. 5 (Apr. 6, 2016 Order); *id.*, Ex. 6 (July 28, 2017 Order); *id.*, Ex. 7 (Dec. 3, 2021 Order).)

While Mr. Edner requests leave to amend in lieu of dismissal, under these facts, no amount of repleading can salvage Mr. Edner's Fourth Amendment claims based on an alleged lack of probable cause for the searches and for his arrest, or any claims arising from the execution of the search and the seizure of his property. Amendment of these claims would be futile, as any amended pleadings could not survive a Rule 12(b)(6) motion. *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014). For all of these reasons, these claims fail to state a claim on which relief can be granted.

The Court also agrees with Defendants that, to the extent Mr. Edner's Fourth Amendment claims are based on his detention in a squad car during the execution of the search warrant, his claims fail.  "A warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *United States v. Freeman*, 964 F.3d 774, 777 (8th Cir. 2020) (citation omitted).  Three justifications support detention during the execution of a search:  "officer safety, facilitating the completion of the search, and preventing flight." *Id.* (citing *Bailey v. United States*, 568 U.S. 186, 200 (2013)).  Here, Mr. Edner was briefly detained at the scene, after firearms were found in the home in which he resided.  His detention minimized potential harm to the officers executing the search and preserved the integrity of the search. *See id.* at 778.

Accordingly, to the extent Mr. Edner bases his Fourth Amendment claim on his detention in a squad car during the execution of the initial search warrant, he fails to state a claim on which relief can be granted and the claim is dismissed.

### 3.  Due Process Claims

Mr. Edner also raises due process claims, alleging that Defendants "failed to properly investigate," failed to consider his brother's claimed alibi evidence, failed to interview a criminal suspect before executing a search warrant, and continued investigating criminal activity after charges were filed. (Compl. at 4–5, 9–10.)  The Due Process Clause, applicable to state actors under the Fourteenth Amendment, prohibits governments from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV. This clause has two components:  procedural due process and substantive due process.

21

*Creason v. City of Washington*, 435 F.3d 820, 824 (8th Cir. 2006).  The Complaint specifically identifies procedural due process as the basis for Mr. Edner's claim, (Compl. at 2), but, out of caution, the Court examines whether Mr. Edner states a claim for either type of violation.

"A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures." *Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998).  Procedural due process requires that an aggrieved party be provided with an opportunity to be heard at a meaningful time and in a meaningful manner.  *Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of the Interior*, 95 F.4th 573, 583 (8th Cir. 2024) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  Thus, a procedural due process claim consists of two elements:  (1) deprivation of a protected interest in life, liberty, or property by a state actor; and (2)  inadequate state process.  *Reed v. Goertz*, 598 U.S. 230, 236 (2023).

While Mr. Edner has sufficiently alleged the deprivation of a protected interest in his liberty or property, his contention that he did not have a full and fair opportunity to be heard is thoroughly refuted by the state court record.  At every turn, the state court afforded him the opportunity to be heard.  The state court entertained his three motions to dismiss/suppress evidence at three omnibus hearings in 2016, 2017, and 2021.  The hearings included the opportunity to submit written briefing and present oral argument, and at the first hearing, to present and cross-examine witnesses, after which the state court judges issued written rulings, rejecting Mr. Edner's arguments.  (Boehm Decl., Ex. 5 (Apr. 6, 2016 Order (State Ct. Index #63) at 1); *id.*, Ex. 6 (July 28, 2017 Order (State Ct. Index #108) at 1); *id.*, Ex. 7 (Dec. 3,

2021 Order (State Ct. Index #188) at 1).)  Accordingly, Mr. Edner's procedural due process claim cannot survive Defendants' Rule 12(b)(6) challenge, and, because repleading would be futile under these facts, it is dismissed.

Any substantive due process claim also fails. In analyzing a substantive due process claim, the Court considers whether Mr. Edner  possessed a right arising under the Fourteenth Amendment, and whether Defendants' conduct deprived him of that right within the meaning of the Due Process Clause.  *Wells v. Walker*, 852 F.2d 368, 370 (8th Cir. 1988).  To meet this burden, Mr. Edner must demonstrate that "the government action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law." *Klein v. McGowan*, 198 F.3d 705, 710 (8th Cir.1999) (internal quotation omitted).  Actionable conduct for purposes of a substantive due process claim must be so outrageous as to "shock the contemporary conscience."  *Estate of Johnson v. Weber*, 785 F.3d 267, 272 (8th Cir. 2015).  To establish a due process violation based on a reckless investigation, a plaintiff must show that the defendants "intentionally or recklessly failed to investigate, thereby shocking the conscience."  *Amrine v. Brooks*, 522 F.3d 823, 834 (8th Cir. 2008).  Circumstances indicating intentional or reckless failure to investigate include:  (1) attempts by the state actor to coerce or threaten the defendant; (2) purposeful disregard of exculpatory evidence; and (3) systemic pressure to implicate the defendant despite contrary evidence.  *Id.* at 833–35.  Improper investigative techniques or the failure to investigate inconsistencies or other leads fail to meet the conscience-shocking standard to support a substantive due process claim. *Manzano v. South Dakota Dep't of Soc. Servs.*, 60 F.3d 505, 512–13 (8th Cir. 1995) (finding improper investigation techniques did not support substantive due process claim); *Akins v.*

23

*Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009) (finding that flawed reports and inconsistent testimony did not rise to level of conscience-shocking conduct); *Clemmons v. Armontrout*, 477 F.3d 962, 966 (8th Cir. 2007) (rejecting claim that failure to investigate another suspect shocked the conscience, as there was "no explanation for why these actions constitute recklessness as opposed to mere negligence.").

Mr. Edner's conclusory allegations fail to rise to the level of conscience-shocking conduct necessary to support a substantive due process claim. At most, his allegations describe negligent conduct, but they fail to describe actionable conduct for purposes of substantive due process. *See Winslow v. Smith*, 696 F.3d 716, 734 (8th Cir. 2012) ("Defendants may not be held liable merely for aggressively investigating the crime, believing witnesses, following leads, and discounting those pieces of evidence that do not fit with the evidence at the scene of the crime.").

For all of these reasons, Mr. Edner's substantive due process claims fail to state a claim on which relief can be granted. Defendants' Motion to Dismiss is therefore granted in this regard.

### 4. Conspiracy Claims

Mr. Edner alleges that Defendants engaged in a conspiracy to violate his constitutional rights under 42 U.S.C. § 1983. To state a § 1983 claim of civil conspiracy, a plaintiff must allege that (1) defendants conspired to deprive the plaintiff of [his] constitutional rights; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. *Faulk v. City of St. Louis*, 30 F.4th 739, 747 (8th Cir. 2022). "The threshold requirement for a § 1983 conspiracy claim is a

24

deprivation of a constitutional right or privilege." *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 844 (D. Minn. 2021) (citing *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008)).

As discussed above, Plaintiff's conspiracy claim fails for lack of an underlying constitutional deprivation. Nor does he plausibly allege facts to support a meeting of the minds among the alleged conspirators. *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). Plaintiff asserts conclusory allegations that are consistent with the existence of a conspiracy, but fails to allege specific facts showing coordination or agreement. Accordingly, his conspiracy allegations fail to state a claim on which relief can be granted. *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1051 (D. Minn. 2010) (dismissing § 1983 conspiracy claim as conclusory under Rule 12(b)(6)).

### 5. Conclusory and Non-Actionable Claims

Finally, Defendants move to dismiss any remaining claims, including those that allege "fraud, lies, omissions, fraudulent misrepresentation, lack of proper investigation, confirmation bias, withholding evidence, police misconduct, failure to follow protocols," without sufficient supporting facts. (Defs.' Mem. at 32 & n.12.) As noted earlier, bare allegations cannot withstand a motion to dismiss. *Twombly*, 550 U.S. at 555. Plaintiff's claims based on conclusory allegations are therefore dismissed.

Likewise, Defendants move to dismiss claims based on bare factual allegations that are not actionable. (Defs.' Mem. at 31–32.) For example, they note that Plaintiff alleges that Investigator Jacobson "did not use a certified scale" when weighing seized marijuana, but Defendants note that the law does not require the use of a "certified" scale. (*Id.* at 31) (citing Compl. at 5.) Rather, the relevant inquiry is whether the evidence of drug quantity is

25

sufficiently reliable. *See United States v. Simmons*, 964 F.2d 763, 776 (8th Cir. 1992) (holding that drug-quantity evidence is sufficient if it possesses "sufficient indicia of reliability."). At the time Mr. Edner was charged with multiple counts of marijuana possession, Minnesota law criminalized the possession of "more than a small amount" of marijuana, defined as 42.5 grams or less. *See* Minn. Stat. § 152.01, subd. 16 (2010). Among the state court's factual findings, it found that a 41-quart tub of marijuana plants was seized, and text messages between Eric Edner and "Bean" referred to a harvest of two pounds of marijuana. (*See* Boehm Decl., Ex. 5 (Apr. 6, 2016 Order); *id.*, Ex. 11 (Dismissal of Criminal Compl.).) Thus, Plaintiff's allegation about the lack of a certified scale fails to describe actionable conduct, and the state court's factual findings demonstrate that the drug quantity evidence was supported by sufficient indicia of reliability. Similarly, Mr. Edner alleges that Investigator Jacobson made verbal threats to intimidate him (Compl. at 5–6), but verbal threats alone are generally not actionable under § 1983, *see Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000), and Mr. Edner asserts no facts showing that such threats implicated his constitutional rights. Accordingly, Plaintiff's claims based on non-actionable conduct fail to state a claim on which relief can be granted and are therefore dismissed.[3]

## III.   ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

---

[3] Because the Court finds that Plaintiff is collaterally estopped from asserting his § 1983 claims, and alternatively, he fails to state a claim on which relief can be granted, the Court need not reach Defendants' argument that Plaintiff's claims are barred by the law of the case, i.e., the Court's August 20, 2025 Order.

A.    Defendants Jason Jacobson and Bostyn Thompson's Motion to Dismiss [Doc. No. 76] is **GRANTED**.

B.    Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: June 26, 2026                                    s/Susan Richard Nelson
                                                       SUSAN RICHARD NELSON
                                                       United States District Judge